ENTERED

JAN 2 5 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY              Deputy Clerk

ENTERED

JAN 2 6 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY              Deputy Clerk

# ORIGINAL

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

In re

LOPE MANALAD,

        Debtor.

BK. No. LA 05–50112 VZ

Chapter 13

**MEMORANDUM OF OPINION**

DATE:  September 26, 2006
TIME:   11:00 a.m.
PLACE: Courtroom 1368
           Roybal Federal Building
           255 E. Temple Street
           Los Angeles, CA 90012

## I. INTRODUCTION

This case involves an individual debtor who filed for relief under Chapter 13 of the Bankruptcy Code[1], did not participate in budget and credit counseling prior to filing for bankruptcy, and did not seek court approval to be exempted from participating in budget and credit counseling (the "Credit Counseling Requirements").[2] The issues are: (1) if an individual debtor is not in compliance with the Credit Counseling Requirements of § 109(h), is dismissal of the bankruptcy case mandatory, or does the court have jurisdiction and discretion to excuse the ineligibility; and (2) if the court has jurisdiction and discretion to allow a debtor to cure a § 109(h) ineligibility, what is an appropriate standard for determining if a debtor is entitled to a cure?

---

[1] Unless otherwise indicated, all code, section and chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure Rules 1001-9036.

[2] As part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") Congress made the Credit Counseling Requirements a prerequisite for eligibility as an individual debtor under Title 11. BAPCPA became effective October 17, 2005, approximately one month before Debtor filed his Petition.

## II. FACTS

On November 21, 2005 ("Petition Date"), Lope Manalad ("Debtor") filed a petition ("Petition") to be a voluntary debtor under chapter 13 together with a chapter 13 plan ("Plan"). The Petition was signed by Kenneth L. Haddix, bankruptcy counsel for Debtor ("Debtor's Counsel"). A hearing ("Confirmation Hearing") was set for February 13, 2006 to determine if Debtor's Plan should be confirmed under § 1325. The Confirmation Hearing was continued to June 12, 2006 to allow the chapter 13 trustee to conduct additional meetings under § 341(a), to obtain documents from Debtor, and to review the Plan. Debtor initially proposed to pay 10% of his creditors' claims, but later amended his Plan to pay 100% of the claims.

Contrary to the requirements of §§ 521(b)(1)-(2)[3], Debtor did not file with his Petition a certificate of credit counseling or a debt repayment plan, either of which would certify that Debtor participated in a budget and credit counseling session prior to filing his bankruptcy case as is required by § 109(h)(1).[4] Debtor also did not seek court approval to participate in budget and credit counseling after filing his Petition as is allowed under certain conditions by § 109(h)(3).[5] Finally, Debtor did not request a waiver of participation in budget and credit

---

[3] § 521(b)(1)-(2) provides:

"(b) In addition to the requirements under subsection (a), a debtor who is an individual shall file with the court--
    (1) a certificate from the approved nonprofit budget and credit counseling agency that provided the debtor services under 109(h) describing the services provided to the debtor; and
    (2) a copy of the debt repayment plan, if any, developed under section 109(h) through the approved nonprofit budget and credit counseling agency referred to in paragraph (1). "

[4] § 109(h)(1) provides for the situation in which an individual participates in budget and credit counseling within 180 days prior to filing a bankruptcy petition:

"(h)(1) Subject to paragraphs (2) and (3), and notwithstanding any other provision of this section, an individual may not be a debtor under this title unless such individual has, during the 180-day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis."

[5] § 109(h)(3) provides for the situation in which an individual may participate in budget and credit counseling within up to 45 days after filing a bankruptcy petition:

"(h)(3)(A) Subject to subparagraph (B), the requirements of paragraph (1) shall not apply with respect to a

1    counseling as is allowed in certain situations by § 109(h)(2)(A)[6] or § 109(h)(4).[7]  On

2    November 21, 2005, a Case Commencement Deficiency Notice ("CCDN ") was generated by

3    the bankruptcy court clerk's office and mailed to Debtor and Debtor's counsel, notifying

     Debtor that these documents needed to be filed.[8]

4

5          On March 15, 2006, the court issued an Order to Show Cause Why Case Should Not Be

6    Dismissed ("OSC") for failure to comply with the Credit Counseling Requirements and set a

7    hearing on the OSC for April 25, 2006.  On April 19, 2006, Debtor filed a response to the OSC

     ("Debtor's Response").  Debtor's Counsel and counsel for the United States Trustee ("UST")[9]

8

9    appeared at the April 25, 2006 hearing.  Based upon Debtor's Response and upon arguments of

10

11   debtor who submits to the court a certification that–(i) describes exigent circumstances that merit a waiver of the
     requirements of paragraph (1); (ii) states that the debtor requested credit counseling services from an approved

12   nonprofit budget and credit counseling agency, but was unable to obtain the services referred to in paragraph (1)
     during the 5-day period beginning on the date on which the debtor made that request; and (iii) is satisfactory to the

13   court."
          "(3)(B) With respect to a debtor, an exemption under sub-paragraph (A) shall cease to apply to that debtor

14   on the date upon which the debtor meets the requirements of paragraph (1), but in no case may the exemption apply
     to that debtor after the date that is 30 days after the debtor files a petition, except that the court, for cause, may order

15   an additional 15 days."

16        [6] § 109(h)(2)(A) provides a conditional, district wide exemption from participating in budget and
     credit counseling:

17   "(h)(2)(A) Paragraph (1) shall not apply with respect to a debtor who resides in a district for which the United States
     Trustee (or the bankruptcy administrator, if any) determines that the approved nonprofit budget and credit counseling

18   agencies for such district are not reasonably able to provide adequate services to the additional individuals who would
     otherwise seek credit counseling from such agencies by reason of the requirements of paragraph (1)."

19

          [7] § 109(h)(4) provides a conditional case by case exemption from participating in budget and credit counseling:

20

     "(h)(4) The requirements of paragraph (1) shall not apply with respect to a debtor whom the court determines, after

21   notice and hearing, is unable to complete those requirements because of incapacity, disability, or active military duty in a
     military combat zone. For the purposes of this paragraph, "incapacity" means that the debtor is impaired by reason of

22   mental illness or mental deficiency so that he is incapable of realizing and making rational decisions with respect to his
     financial responsibilities; and disability" means that the debtor is so physically impaired as to be unable, after reasonable

23   effort, to participate in an in person, telephone, or Internet briefing required under paragraph (1)."

24        [8] The text of the CCDN reads as follows: "To Debtor and Debtor's Attorney of Record, YOUR CASE MAY
     BE DISMISSED IF YOU FAIL TO CURE THE FOLLOWING DEFICIENCIES: A. You must cure the

25   following within 15 days from filing of your petition: * Certificate of Credit Counseling or Certificate of
     "Exigent Circumstances" [11 U.S.C. § 521(b)(1); F.R.B.P. 1007(b)(3)] and * Debt Repayment Plan (if any)

26   [11 U.S.C. § 521(b)(2); F.R.B.P. 1007(b)(3)]".

          [9] The UST did not file a response to the OSC, and has not filed a motion to dismiss Debtor's bankruptcy case.

Debtor's Counsel and counsel for the UST, the court continued the hearing on the OSC to June
12, 2006 to give Debtor's Counsel and counsel for the UST an opportunity to brief the issue of
an individual's eligibility to be a debtor under Title 11 if not in compliance with the Credit
Counseling Requirements.

On May 26, 2006, Debtor filed "Debtor's Statement Re Justification For Not Filing the
Required Certificate of Credit Counseling & Debt Repayment Plan" ("Debtor's Justification").
On June 6, 2006, the UST filed a "Reply to Debtor's Statement of Justification" ("UST
Reply"). Debtor's Counsel and counsel for the UST appeared at the continued hearing. Based
upon Debtor's Justification, the UST Reply, and on arguments made at the continued hearing,
the court set a further hearing on the OSC for July 24, 2006 and ordered Debtor to appear at
that hearing.[10] The court also ordered Debtor to, prior to the July 24, 2006 hearing, participate
in a budget and credit counseling briefing described in § 109(h)(1) and file the certificate of
completion and debt repayment plan described in §§ 521(b)(1)-(2).

On July 17, 2006, Debtor participated in a budget and credit counseling briefing, and on
July 18, 2006, filed a Certificate of Counseling ("Certificate"). The Certificate indicated that a
debt repayment plan was not prepared. Debtor, Debtor's Counsel, and counsel for the UST
appeared at the July 24, 2006 hearing. The July 24, 2006 hearing was continued to August 2,
2006 and then again to September 26, 2006. The Plan was confirmed on October 16, 2006.[11]

Debtor's position is that he was forced to file his Petition on the date that he did because
his employer intended to obey a wage garnishment order for past due child support payments.
Debtor asserts that the only effective way to treat his creditors' claims is through a chapter 13
plan. Upon advice of Debtor's Counsel, Debtor believed that the Credit Counseling
Requirements did not apply to his bankruptcy case because his debts were not consumer debts.
Therefore, Debtor asserts that he should be excused from complying with the Credit

---

[10] The court continued the Confirmation Hearing to July 24, 2006 to be heard concurrently with the OSC.

[11] The order confirming the Plan was entered October 27, 2006, and provided for 36 monthly payments to equal
100% of allowed claims of general unsecured creditors.

Counseling Requirements and be allowed to confirm and consummate his Plan.

The position of the UST is that Debtor's bankruptcy case must be dismissed for lack of eligibility because Debtor did not comply with any of the Credit Counseling Requirements. The UST argues that Debtor's ineligibility under Title 11 cannot be cured under any circumstances, and it was not cured by Debtor participating in a budget and credit counseling briefing on July 17, 2006 and filing his Certificate on July 18, 2006.

## III. ISSUES

The following issues arise from the facts and applicable law in this case:

1. If an individual debtor is not in compliance with the Credit Counseling Requirements, is dismissal of the bankruptcy case mandatory, or does the court have jurisdiction and discretion to excuse the ineligibility?

2. If the court has jurisdiction and discretion to allow a debtor to cure a § 109(h) ineligibility, what is an appropriate standard for determining if a debtor is entitled to a cure?

## IV. ANALYSIS

### A. Credit Counseling Requirements

As discussed above, under § 109(h)(1) or subsection (h)(3), an individual must participate in a session of budget and credit counseling within 180 days prior to or within up to 45 days following the filing of a petition under Title 11, depending upon the circumstances under which the individual filed a petition.[12] Under § 521(b) an individual must provide proof of participation in budget and credit counseling by filing a certification of participation and a copy of the debt repayment plan if a debt repayment plan was prepared at the counseling session; the certification is supposed to describe the services that were provided to the debtor

---

[12] Although the facts of debtor's impending wage garnishment may have qualified as exigent circumstances under § 109(h)(3)(A), Debtor does not argue that he attempted to meet the test of § 109(h)(3)(A) or that he should be granted an extension under § 109(h)(3)(B).

5

and must be provided by the agency that provided the counseling.[13]  Under the version of Rules 1007(b)(3) and 1007(c) in effect on the Petition Date, the time for filing these documents was with the Petition,[14] or within a court approved extended period.[15]  Debtor filed his certificate tardily, one day after participating in budget and credit counseling, 239 days after filing his Petition.[16]

---

[13] Debtor's Certificate provides no details about what was discussed during his counseling session.  At the most recent hearing on the OSC, Debtor testified that his counseling session did not include a discussion of payment alternatives, such as paying his creditors outside of bankruptcy, and did not include a discussion of the negative consequences on his credit rating of filing for bankruptcy.  In each of the cases before me in which debtors have responded to an OSC for failing to participate in budget and credit counseling prior to filing a bankruptcy petition, debtors have testified to the same facts.

[14] Interim Rule 1007 contemplates filing the documents with the petition:

1007. LISTS, SCHEDULES, STATEMENTS, AND OTHER DOCUMENTS; TIME LIMITS.
(b) *Schedules, Statements, and Other Documents Required.*

    "(3) Unless the United States trustee has determined that the credit counseling requirement of section 109 does not apply in the district, an individual debtor must file the certificate and debt repayment plan, if any, required by section 521(b), a certification under section 109(h)(3), or a request for a determination by the court under section 109(h)(4)."

(c) *Time Limits.* "... The documents required by subdivision (b)(3) shall be filed with the petition in a voluntary case."

    [15] Interim Rule 1007 provides a method for extending the time to file these documents:

1007. LISTS, SCHEDULES, STATEMENTS, AND OTHER DOCUMENTS; TIME LIMITS.
(c) *Time Limits.* "... Except as provided in section 1116(3) of the Code, any extension of time for the filing of schedules, statements and other documents may be granted only on motion for cause shown and on notice to the United States trustee and to any ... trustee ... or other party as the court may direct.  Notice of an extension shall be given to the United States trustee and to any ... trustee, or other party as the court may direct."

    [16] Amended Interim Rule 1007, made effective October 1, 2006, amends the filing requirement of Rule 1007(b)(3) and allows the certificate of completion to be filed within 15 days after filing a petition:

(b) *Schedules, Statements, and Other Documents Required.*

    "(3) Unless the United States trustee has determined that the credit counseling requirement of §109(h) does not apply in the district, an individual debtor must file a statement of compliance with the credit counseling requirement, prepared as prescribed by the appropriate Official Form which must include one of the following:
        (A) an attached certificate and debt repayment plan, if any, required by § 521(b);
        (B) a statement that the debtor has received the credit counseling briefing required by §109(h)(1) but does not have the certificate required by § 521(b);
        (C) a certification under § 109(h)(3); or
        (D) a request for a determination by the court under § 109(h)(4)."

(c) TIME LIMITS " ... In a voluntary case, the documents required by paragraphs (A), (C), and (D) of subdivision (b)(3) shall be filed with the petition.  Unless the court orders otherwise, if the debtor has filed a statement under subdivision (b)(3)(B), the documents required by subdivision (b)(3)(B) shall be filed within 15 days of the order for relief."

6

Under § 109(h)(2)(A) or subsection (h)(4), an individual debtor can be exempted from participation in budget and credit counseling and the filing of a certificate of completion by establishing that (1) the UST determined that adequate credit counseling services were not available in the individual's district, (2) the individual is incapacitated or is disabled, or (3) the individual is on active duty in a military combat zone. None of these exemptions apply to Debtor in this case, and Debtor does not argue that any of them apply.

## B. Dismissal and Jurisdiction

The position of the UST is that dismissal is mandatory for Debtor's bankruptcy case or any other bankruptcy case in which the Credit Counseling Requirements are not satisfied, and therefore, the court lacks jurisdiction to fashion a remedy other than dismissal. I disagree with the UST's argument, based upon a review of the Bankruptcy Code, case law concerning jurisdiction and/or dismissal, and consideration of the harsh consequences of dismissal.

### 1. Jurisdiction and Statutory Construction

In a recent opinion, the Supreme Court analyzed how the absence of jurisdiction differs from a missing element of a claim for relief and what is meant when the language of a statute is silent on jurisdiction. In Arbaugh v. Y & H Corp. dba the Moonlight Café, 546 U.S. 500 (2006), a female employee brought an action under Title VII of the 1964 Civil Rights Act in federal court against her former employer, charging sexual harassment. The case was tried by a jury, which returned a verdict in favor of the plaintiff. After the conclusion of the trial, the defendant requested dismissal of the action under Federal Rule of Civil Procedure 12(h)(3) for lack of subject matter jurisdiction. The defendant cited the definition of "employer" under 42 U.S.C. § 2000e(b) for the premise that it was not subject to liability under Title VII because the defendant had fewer than fifteen employees and therefore did not meet the definition of an employer for Title VII purposes. This was the first stage of the proceedings at which the

defendant raised the issue of jurisdiction or the fifteen employee requirement. The district court determined that the defendant had fewer than fifteen employees and therefore granted the motion to dismiss. The dismissal was affirmed by the Fifth Circuit Court of Appeals.

The Supreme Court granted certiorari to resolve conflicting opinions in Courts of Appeals on the question of whether Title VII's employee numerosity requirement of 42 U.S.C. § 2000e(b) is jurisdictional in nature or simply an element of a plaintiff's claim for relief. In making its determination, the Court looked to the language that Congress inserted into the statute. In her complaint, the plaintiff invoked federal-court subject matter jurisdiction under 28 U.S.C. § 1331, pleading a colorable claim arising under a law of the United States.[17] The plaintiff's claim arose under a federal law, namely 42 U.S.C. § 2000e-2(a)(1), and there is no mention of jurisdiction in this statute.[18] Instead, the Civil Rights Act's jurisdictional provision is 42 U.S.C. § 2000e-5(f)(3), which empowers federal courts to adjudicate civil actions brought under Title VII.[19] This jurisdictional statute was added by Congress to underscore Congress' intention to provide a federal forum for the adjudication of claims without setting an amount-in-controversy threshold. The employee numerosity requirement cited by the defendant appears in

---

[17] 28 U.S.C. § 1331. *Federal question*, provides: "The district courts shall have original jurisdiction of civil actions arising under the Constitution, laws or treaties of the United States."

[18] 42 U.S.C. § 2000e-2, *Unlawful Employment Practices*, provides in part:

"(a) Employer practices    It shall be an unlawful employment practice for an employer–
(1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;"

[19] 42 U.S.C. § 2000e-5, *Enforcement Provisions*, provides in part:

"(f)(3) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the state in which the unlawful employment practice is alleged to have been committed, in the judicial district where the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found in any such district, such an action may be brought in the judicial district in which the respondent has his principal office ..."

a separate section headed "Definitions," 42 U.S.C. § 2000e.[20]

1

2      In its analysis, the Supreme Court reasoned:

3      Of course, Congress could make the employee-numerosity requirement
       'jurisdictional,' just as it has made an amount-in-controversy threshold
       an ingredient of subject-matter jurisdiction in delineating diversity-of-
4      citizenship jurisdiction under 28 U.S.C. § 1332.[21]  But neither § 1331,
       nor Title VII's jurisdictional provision, 42 U.S.C. § 2000e-5(f)(3)
5      (authorizing jurisdiction over actions 'brought under' Title VII), specifies
       any threshold ingredient akin to 28 U.S.C. § 1332's monetary floor.
6      Instead, the 15-employee threshold appears in a separate provision that
       does not speak in jurisdictional terms or refer in any way to the jurisdiction
7      of the district courts.

8  Arbaugh, 546 U.S. at 510.

9      The Court continued its reasoning and adopted a bright line test, holding that:

10     If the Legislature clearly states that a threshold limitation on a statute's
       scope shall count as jurisdictional, then courts and litigants will be duly
11     instructed and will not be left to wrestle with the issue [citation omitted].
       ... But when Congress does not rank a statutory limitation on coverage
12     as jurisdictional, courts should treat the restriction as non-jurisdictional.
       Applying that readily administrable bright line to this case, we hold that
13     the threshold number of employees for application of Title VII is an
       element of a plaintiff's claim for relief, not a jurisdictional issue.

14
   Arbaugh, 546 U.S. at 510.
15
       Applying this test to the present case, Congress has not inserted in § 109(h) or anywhere
16
   else in the Code that eligibility is a jurisdictional issue.  Therefore, I conclude that § 109(h)
17
   eligibility is not jurisdictional in nature.
18

19
   _____

20     [20] 42 U.S.C. § 2000e. *Definitions* provides in part: "For the purposes of this subchapter—

21  (b) the term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees
   for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent
22  of such person ..."

23     [21] 28 U.S.C. § 1332. *Diversity of citizenship; amount in controversy; costs*    Provides in part:

24  "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the
   sum or value of $75,000, exclusive of interest and costs, and is between—
25         (1) citizens of different States;
       (2) citizens of a State and citizens or subjects of a foreign state;
26         (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
       (4) a foreign state, defined in § 1603(a) of this title, as plaintiff and citizens of a State or of  different States."

## 2. The Bankruptcy Code Does Not Mandate Dismissal

There is a completely separate statutory basis for concluding that a lack of eligibility does not mandate dismissal. Nowhere in Title 11 is there a provision setting forth the remedy for failure to comply with the Credit Counseling Requirements, while the remedy of dismissal is specifically provided for in other situations.

For example, in § 521(i)(1) Congress mandates dismissal[22] for failure to file certain schedules, statements, and employer payment information, if such documents are not filed within 45 days of filing a bankruptcy petition.[23] Congress listed these schedules, statements, and other information in § 521(a)(1),[24] but set forth a specific subsection, § 521(b), to describe the budget and credit counseling documents that need to be filed.[25] Section 521(i)(1) omits the

---

[22] § 521(i)(1) provides a remedy for not filing, within 45 days of filing a petition, all items listed in § 521(a)(1):

"Subject to paragraphs (2) and (4) and notwithstanding section 707(a), if an individual debtor in a voluntary case under chapter 7 or 13 fails to file all of the information required under subsection (a)(1) within 45 days after the date of the filing of the petition, the case shall be automatically dismissed effective on the 46th day after the date of the filing of the petition."

[23] For an analysis of § 521(i) and its relationship to § 521(a) and the concept of automatic dismissal, see In re Parker, 351 B.R. 790 at page 799 et seq. (Bankr.N.D.Ga. 2006).

[24] § 521(a)(1) identifies many items that a debtor shall file with a petition under Title 11.

"(a) The debtor shall—
    (1) file–
    (A) a list or creditors--; and
    (B) unless the court orders otherwise---
            (i) a schedule of assets and liabilities-;
            (ii) a schedule of current income and current expenditures;
            (iii) a statement of the debtor's financial affairs; and, if section 342(b) applies, a certificate—
                    (I) of an attorney whose name is indicated on the petition as the attorney for the debtor, or a
                    bankruptcy petition preparer signing the petition under section 110(b)(1), indicating that such
                    attorney or the bankruptcy petition preparer delivered to the debtor the notice required by section
                    342(b); or
                    (II) if no attorney is so indicated, and no bankruptcy petition preparer signed the petition, of the
                    debtor that such notice was received and read by the debtor;
            (iv) copies of all payment advices or other evidence or payment received within 60 days before the
            date of the filing of the petition, by the debtor from any employer of the debtor;
            (v) a statement of the amount of monthly net income, itemized to show how the amount is calculate;
            and
            (vi) a statement disclosing any reasonably anticipated increase in income or expenditures of the 12-
            month period following the date of the filing of the petition."

[25] See supra FN 3.

credit counseling certificate and debt repayment plan from the mandatory dismissal remedy that is imposed when a debtor fails to file many of the other documents required in a bankruptcy case. Thus, I conclude that Congress intended that dismissal is not mandated when debtors do not comply with the Credit Counseling Requirements.

Furthermore, even in situations where § 521(i)(1) mandates dismissal, the court has discretion under § 521(i)(3) to extend the period for filing documents listed in § 521(a) and, under § 521(i)(4), to decline to dismiss a case if the court finds that the debtor attempted in good faith to file the required information and that the best interest of creditors would be served by administration of the case."[26]

Additionally, in certain conditions a case may be dismissed upon a motion and hearing if the elements of §§ 707(a)-(b), 1112(b), or 1307(c), are met.  Likewise, even in these situations, the court has discretion to find that dismissal is not the appropriate remedy.

I conclude that Congress, by choosing not to mandate dismissal as the consequence for failing to comply with the Credit Counseling Requirements, gave the courts discretion to fashion a remedy that is appropriate under the circumstances of each case.

### 3. Case Law on §§ 109 and 303(a) Eligibility and Jurisdiction

This conclusion is supported by the Ninth Circuit Bankruptcy Appellate Panel's ("BAP") ruling in In re Wenberg, 94 B.R. 631 (9th Cir. BAP 1988) in which the interplay of § 109(e) and jurisdiction was analyzed.  The debtors in Wenberg were individuals who filed a petition under chapter 13 and listed debts owed to a particular creditor as contingent and unliquidated.  The creditor objected to confirmation of the debtors' chapter 13 plan on the basis that the creditor's

---

[26] § 521(i)(3)-(4) provides:

"(3) Subject to paragraph (4) and upon request of the debtor made within 45 days after the date of the filing of the petition described in paragraph (1), the court may allow the debtor an additional period of not to exceed 45 days to file the information required under subsection (a)(1) if the court finds justification for extending the period for the filing.

(4) Notwithstanding any other provision of this subsection, on the motion of the trustee filed before the expiration of the applicable period of time specified in paragraph (1), (2) or (3), and after notice and a hearing, the court may decline to dismiss the case if the court finds that the debtor attempted in good faith to file all the information required by subsection (a)(1)(B)(iv) and that the best interest of creditors would be served by administration of the case."

claims were liquidated.  The creditor filed a motion to convert or dismiss the debtors' case and for relief from the automatic stay to proceed with the state court lawsuit that gave rise to the creditor's claims.  The debtors never filed a formal motion to convert their chapter 13 case to a case under chapter 7.  The bankruptcy court concluded that the particular debts were liquidated and therefore the amount of the debtors' debts exceeded the debt limits set forth in § 109(e).  The court ruled that the debtors were ineligible to be debtors under chapter 13 and entered a sua sponte dismissal of the case on the basis that eligibility under § 109(e) is jurisdictional and therefore the court lacked jurisdiction to enter an order converting the chapter 13 case to a case under chapter 7.

On appeal by the debtors, the Ninth Circuit BAP affirmed the bankruptcy court's ruling that the debts were liquidated, but the panel reversed in favor of the debtors on the issue of dismissal,[27] holding that § 109 eligibility issues are not jurisdictional in nature.[28]

In other decisions, Circuit Courts of Appeals have also concluded that debtor ineligibility does not strip a bankruptcy court of jurisdiction to consider other issues or enter orders.[29]  The Fifth Circuit Court of Appeals addressed eligibility under § 109(g)(2) and jurisdiction in In re Phillips, 844 F.2d 230 (5th Cir. 1988).  In that case, a debtor ("Phillips") filed a petition under chapter 13; she then moved to convert the chapter 13 case to one under chapter 11 or chapter 7.  A secured creditor filed a motion for relief from the automatic stay under § 362 to proceed with a foreclosure.  Prior to a ruling on the debtor's motion to convert or the creditor's motion for

---

[27] "... Support for holding that 109(e) eligibility is not jurisdictional in nature may be derived by implication from the language of section 109 which states nothing of the bankruptcy court's subject matter jurisdiction, but concerns only the 'eligibility of debtors for relief'." "Accordingly, this Panel concludes that section 109 eligibility is not jurisdictional and this case is remanded to the bankruptcy court to allow the debtors the opportunity to file and have considered a motion to convert their case." See In re Wenberg, 94 B.R. at 636, 637.

[28] The debtors appealed the ruling of the 9th Circuit B.A.P. regarding the liquidated nature of the creditor's claim, and the Ninth Circuit Court of Appeals affirmed the ruling of the B.A.P. for the reasons set forth in the B.A.P.'s opinion without referring to the discussion on jurisdiction. In re Wenberg, 902 F.2d 768 (9th Cir. 1990).

[29] In addition, some bankruptcy courts have analyzed eligibility under § 109(h) and agreed that § 109(h) eligibility is not jurisdictional, see In re Parker, 351 B.R. 790 at page 796 (Bankr.N.D.Ga 2006), In re Seaman, 340 B.R. 698, 706 et seq. (Bankr.E.D.N.Y. 2006), In re Tomco, 339 B.R. 145, 159 (Bankr.W.D.Pa. 2006), and In re Ross, 338 B.R. 134, 136 (Bankr.N.D.Ga 2006).

relief from the automatic stay, the debtor requested and obtained an order dismissing the chapter 13 proceeding. Soon thereafter, a second creditor ("Bank") commenced an action in state court against the debtor. The debtor then filed a second bankruptcy petition, this time under chapter 7. The Bank filed a motion to dismiss the case on the grounds that under § 109(g)(2), Phillips was not eligible to be a debtor because her second petition had been filed within 180 days of the filing of her first petition and another creditor had filed a motion for relief from the automatic stay during the pendency of the first bankruptcy.[30] The court denied the Bank's motion to dismiss, and the Bank appealed the order to the district court without seeking leave to appeal under 28 U.S.C. § 158(a)[31] and without attempting to stay the bankruptcy proceeding pending appeal as permitted under Rule 8005. The district court denied the appeal as moot, as the bankruptcy case proceeded to a discharge for the debtor while the appeal was pending. The Bank appealed this ruling to the Fifth Circuit Court of Appeals, which determined that it would lack jurisdiction if it found that the bankruptcy court order was interlocutory (i.e. a non-final order), and that the action taken by the district court failed to cure the non-final nature of the bankruptcy court order.[32] The court dismissed the appeal after concluding that the bankruptcy court order was non-final in nature and that the district court order did not cure the non-final nature of the bankruptcy court order.

---

[30] § 109(g) provides:

"Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title."

[31] 28 U.S.C. § 158(a) provides :

"The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving."

[32] 28 U.S.C. § 158(d) provides:

"The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsection [ ] (a) ... of this section."

One of the Bank's arguments in seeking dismissal was that eligibility under § 109(g) raised an issue of subject matter jurisdiction. In its analysis of this argument, the Fifth Circuit reached two conclusions. First, it cited United States Supreme Court authority for the holding that an order denying a motion to dismiss for lack of subject matter jurisdiction is not a final order,[33] and therefore, even if the Bank's appeal raised the issue of subject matter jurisdiction, the court would still have to dismiss the appeal because the underlying order failed to meet the criteria of 28 U.S.C. §§ 158(a) and (d). Second, the court concluded that eligibility under § 109(g) does not raise an issue of subject matter jurisdiction.[34] The court cited five main reasons for its holding: (1) Congress framed § 109(g)(2) in terms of eligibility, without referring to jurisdiction; (2) Congress provided creditors with alternative procedures when a debtor is ineligible, including objection to discharges of ineligible debtors under §§ 523 and 727 and appealing the denial of a motion to dismiss the petition and simultaneously staying any further proceedings pursuant to Rule 8005; (3) if eligibility raised an issue of subject matter jurisdiction, the parties could not expressly waive, or be held to have waived, their objections on the issue; (4) the issue may, and indeed must, be raised on appeal, even on the court's own motion; and (5) to hold that the issue of debtor eligibility implicates subject matter jurisdiction would have far-reaching consequences.[35]

The issue of §109(e) eligibility and jurisdiction was addressed by the Eighth Circuit Court of Appeals in In re Rudd, 866 F.2d 1040 (8th Cir. 1989). In that case, the Rudds were co-debtors who filed their sixth chapter 13 petition within a four year period. The chapter 13 trustee moved under § 1307(c) to dismiss or convert the case on the grounds that the debtors had abused the bankruptcy system and were ineligible to be debtors under chapter 13 because their unsecured debts exceeded the $100,000.00 limit of § 109(e). The debtors opposed conversion

---

[33] Citing Caitlin v. United States, 324 U.S. 229, 232 (1945) and In re Greene County Hosp., 835 F.2d 589 (5th Cir. 1988).

[34] See In re Phillips, 844 F. 2d at 235, 236, Footnote 2.

[35] See supra, FN 34 .

14

of their case, citing In re Wulf, 62 B.R. 155, 158 (Bankr.D.Neb. 1986) for the proposition that when a person is found by the court under § 109(e) to be ineligible to be a debtor under chapter 13, the case filed by that person is a "nullity", and the court has no jurisdiction to convert the non-existent case to a case under another chapter. The debtors also cited In re Koehler, 62 B.R. 70, 72-73 (Bankr.D.Neb. 1986) for the proposition that the debt limits in § 109(e) were comparable to the amount-in-controversy requirement for district court's diversity jurisdiction. The trustee asked the bankruptcy court to make an exception to the rule cited in Wulf. The bankruptcy court granted the motion to convert, and, on appeal, the conversion order was affirmed by the district court. However, the district court disapproved of the holding of Wulf, rather than relying on an equitable exception to it. Instead, the district court reasoned that a debtor's ineligibility for chapter 13 relief is more like a failure to state a claim than it is like a failure to satisfy the amount in controversy in a diversity case; the court concluded that such ineligibility does not deprive the court of subject matter jurisdiction.[36] The debtors appealed the ruling of the district court, but the Eighth Circuit Court of Appeals affirmed the district court. In its analysis, the court specifically disapproved of the holdings in Wulf and Koehler, and it cited with approval the conclusions of the court in Phillips. The court cited Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 71 (1982), for its holding that the filing of a petition in bankruptcy court seeking assistance in the restructuring of debtor-credit relations is at the core of the federal bankruptcy power. The court cited 28 U.S.C. §§ 1334 and 157 to conclude that the bankruptcy court has jurisdiction to administer the ensuing case in accordance with Title 11. The court further concluded that unlike 28 U.S.C. § 1332, which grants diversity jurisdiction only when the amount in controversy requirement is met, § 109(e) is not meant to restrict jurisdiction granted under 28 U.S.C. §§ 1334 and 157.

---

[36] See Rudd v. Laughlin (In re Rudd), 95 B.R. 705 (Dist.Ct.Neb. 1988).

The issue of eligibility under § 109(c)[37] and jurisdiction was addressed by the Tenth Circuit Court of Appeals in In re Hamilton Creek Metropolitan Dist., 143 F.3d 1381 (10th Cir. 1998). In that case, a municipality filed for protection under chapter 9 and negotiated a debt adjustment plan with its bondholders, resulting in confirmation of the plan by the court. Problems arose with carrying out the plan. The municipality filed a second petition under chapter 9, to which a bondholder objected. The court dismissed the second petition on the grounds that the municipality was ineligible to be a debtor under chapter 9 because the debtor did not meet the criteria of insolvency set forth in § 109(c) and defined in § 101(32)(C).[38] On appeal by the municipality, the district court affirmed the dismissal. On appeal again, the Circuit Court affirmed the dismissal. As part of its ruling, the Circuit Court reasoned that none of the § 109(c) criteria is jurisdictional in nature.[39]

Finally, the issue of eligibility under § 303(a)[40] and jurisdiction was addressed by the Fifth Circuit Court of Appeals in In re McCloy, 296 F.3d 370 (5th Cir. 2002), and relied upon by the Eighth Circuit Court of Appeals in In Re Marlar, 432 F.3d 813 (8th Cir. 2005). In McCloy, creditors filed an involuntary chapter 7 petition against the McCloys, husband and wife. The case was subsequently converted to a case under chapter 11 and then back to a case under chapter 7. The bankruptcy court approved a settlement with a petitioning creditor, involving a

---

[37] § 109(c) identifies five elements to eligibility under chapter 9, including:

"An entity may be a debtor under chapter 9 of this title if and only if such entity—
    (1) is a municipality; and
    (3) is insolvent."

[38] § 101(32) provides: "insolvent" means –
    "(C) with reference to a municipality, financial condition such that the municipality is– (i) generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute; or (ii) unable to pay its debts as they become due."

[39] In re Hamilton Creek Metropolitan Dist., 143 F.3d at 1385, FN 2.

[40] § 303(a) provides:

"An involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person, except a farmer, family farmer, or a corporation that is not a moneyed, business, or commercial corporatioin, that may be a debtor under the chapter under which such case is commenced."

parcel of property that it determined was community property and belonged to the bankruptcy estate. The debtors objected to the settlement, and at some point had filed a motion to dismiss the involuntary petition. The debtors appealed the settlement order to the district court, which affirmed the trial court. The debtors appealed again and the Circuit Court affirmed the district court ruling. In the second appeal, Mr. McCoy argued that he was a farmer and therefore ineligible under § 303(a) to be an involuntary debtor. Mr. McCoy's status as a farmer was not ruled on by the bankruptcy court or considered by the district court on appeal[41] and therefore the Circuit Court did not address the issue. However the Circuit Court held:

> Therefore, because farmer status is not jurisdictional but is an affirmative defense that may be waived, we do not consider McCloy's argument that he is a farmer and therefore not subject to an involuntary bankruptcy proceeding.

McCloy, 296 F.3d at 376.

Similarly, in Marlar, an involuntary chapter 7 petition was filed against a debtor, and an order for relief was subsequently entered. Five years later, the debtor filed a motion to dismiss his case, arguing that he was a family farmer and, under § 303(a), an involuntarily petition could not have been commenced against him. The bankruptcy court denied the motion without reaching a conclusion of the debtor's status as a farmer, instead holding that the debtor had waived his right to assert ineligibility under § 303(a). The district court and Eighth Circuit Court of Appeals affirmed the order denying the motion to dismiss, with the latter citing McCloy for its conclusion that an individual's status as a farmer is not jurisdictional, but rather it is an affirmative defense that may be waived and was waived in that case.[42]

---

[41] The Circuit Court was unable to locate a ruling of the bankruptcy court contained within the record on appeal that specifically addressed the issue of Mr. McCoy's status as a farmer, including at what point in the proceedings this issue was raised. However, at the hearing on the motion to dismiss, evidence was to be presented as to Mr. McCoy's status as a farmer or whether he engaged in farming operations. According to the petitioning creditors' response to the motion, Mr. McCoy consented to the entry of an order for relief. He did not raise his status as a farmer on appeal to the district court. Therefore, the Circuit Court did not address the issue of his status.

[42] In Re Marlar, 432 F.3d at 815. The Eighth Circuit Court of Appeals held that "A farmer against whom an involuntarily petition is filed must timely controvert the petition by raising his or her status as a farmer in order to preclude the commencement of an involuntary case." "Accordingly, we hold that an alleged debtor must timely assert his or her status in one of the exempted categories as an affirmative defense. If the alleged debtor fails to timely raise the issue, it is waived." "We are unconvinced that Congress created a provision in the bankruptcy code which would

In light of the collective wisdom of the decisions discussed above, along with the holding in <u>Arbaugh</u>, I conclude that I have jurisdiction and discretion to allow Debtor to cure his § 109(h) eligibility deficiency.

### 4. Case Law on § 109(h) and Dismissal

Numerous courts have published opinions on the issue of the Credit Counseling Requirements.[43] A majority have concluded that dismissal is mandated when a debtor is found to have not complied with the Credit Counseling Requirements,[44] and in virtually all of these cases, the issue has been whether a debtor has timely provided a satisfactory explanation of exigent circumstances.[45] In other cases, the court ordered dismissal of petitions but did not provide any discussion on the distinction between or the impact of dismissing a bankruptcy petition as opposed to dismissing a bankruptcy case,[46] including one court which also made a ruling about the impact of a debtor re-filing a bankruptcy case and the reduced availability of the

---

allow the alleged debtor to play the ultimate trump card at any point in the involuntary bankruptcy proceeding."

[43] For an article addressing these variety of cases and the impact and meaning of the varied results, see <u>Putting Order to the Madness: BAPCPA and the Contours of the New PreBankruptcy Credit Counseling Requirements</u>, Jeffery A. Deller and Nicholas E. Meriweather, Journal of Bankruptcy Law and Practice, 16 J.Bankr. L. & Prac. 1 Art. 1 (February 2007).

[44] For a list of the nearly three dozen cases reported prior to March 2006, see <u>In re Seaman</u>, 340 B.R. 698, 706 et seq. (Bankr.E.D.N.Y. 2006), especially Footnote 3. See also <u>In re Racette</u>, 343 B.R. 200 (Bankr. E.D.Wis. 2006) (the court dismissed case in which the debtors filed a motion to strike the petition instead of to dismiss the case). For cases reaching opposite results on whether the 180 day period "preceding the date of the filing of the petition" includes the date on which the petition is filed, see <u>In re Warren</u>, 339 B.V. 475 (Bankr.E.D.Ark.2006) (the court did not dismiss the case in which the debtor obtained credit counseling four hours prior to filing his chapter 13 petition) and <u>In re Mills</u>, 341 B.R. 106 (Bankr.D.Col. 2006) (on a motion by the chapter 13 trustee, the court dismissed the case in which a debtor obtained credit counseling on the same day that she filed her chapter 13 petition).

[45] For an example of § 109(h)(3) and the remedy of dismissal, see <u>In re Dixon,</u>, 338 B.R. 383 (8th Cir. B.A.P. 2006), which analyzes cases involving the Credit Counseling Requirements in the first few months following the effective date of BAPCPA.

For an analysis of § 109(h)(4), see <u>In re Tulper</u>, 345 B.R. 322 (Bankr.D.Colo. 2006), in which the debtors were granted an exemption to the Credit Counseling Requirements based upon incapacity.

[46] In <u>In re Childs</u>, 335 B.R. 623 (Bankr.D.Md. 2005) the court analyzed the cases of five unrelated debtors and found that none of the debtors' situations met the exigent circumstances standard of § 109(h)(3).

automatic stay of § 362.[47] To date, at least nine courts have concluded that remedies other than dismissal of the bankruptcy case are appropriate despite failure of a debtor to comply with the Credit Counseling Requirements.

### a. Courts Allowing Bankruptcy Case to Proceed Without Dismissal

In In re Brickson, 346 B.R. 497 (Bankr.N.D.Cal. 2006), a husband and wife filed a voluntary chapter 7 petition. More than 180 days prior to filing their petition, and prior to the effective date of BAPCPA, the debtors sought the assistance of a credit counseling service because of a job loss and inability to pay the family's bills. The counseling service recommended that the debtors file for bankruptcy protection, but the debtors were determined to pay their creditors outside of bankruptcy. A debt repayment plan was formulated, and the debtors paid $2,200 per month for several months (more than $11,000.00) before it became apparent that they could not keep up with payments. The debtors revisited the credit counseling service in late July 2005 and were advised again to file for bankruptcy, which they did on November 22, 2005. On December 2, 2005, the UST filed a motion to dismiss the debtors' case under § 707(a)[48] on the grounds that debtors' initial participation in credit counseling was more than 180 days prior to filing their petition, and the agency which provided the credit counseling

---

[47] See In re Valdez, 335 B.R. 801 (Bankr.S.D.Fla. 2005). The Court held that "Because the petition failed to provide Mireilys Valdez' status as a debtor, the Court will not consider this a dismissed case in which the individual was the debtor, for purposes of denying the imposition of the automatic stay in subsequently filed case pursuant to 11 U.S.C. § 362. Thus, the Court views the criteria established by 11 U.S.C. § 109 as jurisdictional. Should Mirielys Valdez proceed to obtain budget and credit counseling, she will then be eligible to become a debtor under section 109, and any petition thereafter filed in a timely manner, within 180 days after completion of the credit counseling services, will be treated as her first petition, not subject to 11 U.S.C. § 362(c)(3) or (c)(4)." See In re Valdez, 335 B.R. at 803-804. See also FN 73-76 below for citations to § 362(c)(3) and (c)(4).

[48] § 707(a) provides:

"(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
  (1) unreasonable delay by the debtor that is prejudicial to creditors;
  (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
  (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee."

Note that under BAPCPA, the organization of § 521 was changed from 521(1) to 521(a)(1), while the language of § 707(a)(3) does not reflect this change.

service had not been approved by the UST.[49] Promptly thereafter, the debtors participated in

and paid for an additional credit counseling briefing and filed their certificate of completion.

The court denied the UST's motion to dismiss on multiple grounds: (1) the debtors'

performance represented their very best effort to comply with the Credit Counseling

Requirements and was substantially in compliance with the spirit of the intent of the Credit

Counseling Requirements; (2) the debtors had received extensive pre-petition credit counseling

and made substantial payments to creditors from the repayment plan; (3) the debtors' need for a

bankruptcy filing was not and could not have been obviated by additional credit counseling, and

the debtors were keenly aware of the implications of the bankruptcy filing; (4) by participating

in credit counseling again after filing their petition, the debtors had now paid twice for credit

counseling; and (5) it was inequitable to require the debtors to start over,[50] pay a second $299.00

filing fee, and be subject to potential limitations of the automatic stay.[51]

In re Hess, 347 B.R. 489 (Bankr.D.Vt. 2006), a debtor participated in budget and

credit counseling approximately three months before filing his chapter 7 petition, but the agency

was not yet approved by the UST. The debtor filed his petition; then he participated in budget

and credit counseling from an approved agency eleven days later. The UST filed a motion to

dismiss the debtor's case under § 707(a) for failure to comply with the Credit Counseling

Requirements. The court denied the motion, concluding that the language of § 707(a) does not

---

[49] The UST did not argue that debtors were improperly counseled or were misled by the non-approved agency, and did not introduce any evidence that the agency's procedures were required to be revamped following BAPCPA.

[50] In a case with similar facts, all taking place after the effective date of BAPCPA, a court recently reached the opposite conclusions. See In re Jones, 2006 WL 3020477 (Bankr. S.D.Tex. Oct. 20, 2006). In that case, the debtors obtained budget and credit counseling 190 days before filing their bankruptcy petition, 10 days beyond the time period specified in § 109(h). The UST filed a motion to dismiss. In their opposition, debtors alleged that they: (1) consulted a bankruptcy attorney on January 19, 2006; (2) promptly took a credit counseling course (January 24, 2006); (3) could not afford attorney's fees at that time; (4) implemented the credit counseling advice and hoped they could avoid bankruptcy; (5) forgot about the bankruptcy because of intervening family illness; (6) had difficulty getting financial information from their employers and information to file their tax returns; and (7) could not afford $40 for an additional credit counseling course and $299 for an additional bankruptcy case filing fee. Nevertheless, the Court held that "Congress allowed bankruptcy judges no discretion."

[51] See discussion below and at FN 73-76.

mandate dismissal and that Congress did not intend to limit the court's exercise of discretion under § 707(a) when determining a motion to dismiss[52] based upon a credit counseling eligibility defect. The court compared the discretionary language of § 707(a) with the mandatory dismissal language of §§ 521(e)(1)(B)[53] and 521(i).[54] The court established a "totality of the circumstances" test, identifying six essential elements to consider:

> 1. Whether the debtor filed the case in good faith;
> 2. Whether the debtor took all reasonable steps to comply with the statutory requirements;
> 3. Whether the debtor's failure to comply was the result of circumstances that were both extraordinary and beyond the control of the debtor;
> 4. Whether the debtor's conduct meets the minimum requirements of § 109(h);
> 5. Whether any party would be prejudiced by allowing the case to proceed; and
> 6. Whether there are any unique equitable factors that tip the balance in one direction or another.

Hess, 347 B.R. at 498.

In In re Petit-Louis, 344 B.R. 696 (Bankr. S.D.Fla. 2006), a debtor filed a voluntary chapter 7 petition and requested a waiver of the Credit Counseling Requirements under § 109(h)(2) on the basis that he only spoke Creole fluently, had limited English language skills, and that the approved credit counseling agencies in the district lacked Creole credit counselors.[55] The UST filed a motion to dismiss the debtor's case, which the court denied. The UST filed a motion for reconsideration, which the court also denied.

In In re Parker, 351 B.R. 790 (Bankr. N.D.Ga. 2006), a debtor filed a voluntary petition under chapter 7 on February 6, 2006. The debtor did not participate in budget and credit

---

[52] As support for its discretion, the court cited In re Zick, 931 F.2d 1124, 1126 (6th Cir. 1991), In re Atlas Supply Corp., 857 F.2d 1061, 1063 (5th Cir. 1988), and In re Owens, 155 Fed.Appx 42, 45 (2nd Cir. 2005).

[53] § 521(e)(1)(B) provides:

"If the debtor fails to comply with clause (i) or (ii) of subparagraph (A), the court shall dismiss the case unless the debtor demonstrates that the failure to so comply is due to circumstances beyond the control of the debtor."

[54] See supra FN 22.

[55] See supra FN 6.

counseling prior to filing his petition. Fifteen days post-petition, the debtor sought court approval to obtain credit counseling services, although the debtor never actually obtained the credit counseling briefing. The debtor also did not submit payroll information from an employer as required under § 521(a)(1)(B)(iv).[56] The chapter 7 trustee filed a motion to sell the debtor's "Fantasy Houseboat" and set the hearing for May 30, 2006. The debtor then filed a motion to dismiss his bankruptcy case, arguing that he was ineligible to be a debtor for failing to comply with the Credit Counseling Requirements, and that his case should have been automatically dismissed under § 521(i)(1) for not submitting the required payroll information. The UST opposed debtor's motion and supported the sale. The court denied the debtor's motion, holding that the debtor had waived his right to contest eligibility by actively participating in his bankruptcy case for nearly four months,[57] and that there was no payroll information to submit because the debtor had testified at his § 341(a) meeting of creditors that he was self-employed during the 60-day period described by § 521(a)(1)(B)(iv).

In In re Romero, 349 B.R. 616 (Bankr.N.D.Cal. 2006), the debtors filed a voluntary chapter 7 petition, had requested credit counseling three days before filing their petition, were unable to obtain the counseling before filing their petition, and needed to file for bankruptcy to prevent a garnishment of one of the debtor's wages. The debtors participated in credit counseling four days after filing their petition and promptly filed the certificate of completion. The UST filed a motion to dismiss the debtors' case, apparently arguing that the situation lacked exigent circumstances because the debtors knew of the impending wage garnishment. The court

---

[56] See supra FN 24 .

[57] As support for its holding, the Court cited In re Marlar, 432 F.2d 813 (8th Cir. 2005). See supra FN 42 .

The court also relied on the concept of judicial estoppel, citing New Hampshire v. Maine, 532 U.S. 742 (2001), quoting Davis V. Wakelee, 156 U.S. 680, 689 (1895): "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." The Court also cited Pegram v. Herdrich, 530 U.S. 211 (2000): The rule of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."

1  denied the motion, instead finding that a looming garnishment met the exigent circumstances

2  test under § 109(h)(3).[58]

### b. Court Which Rendered the Case Void Ab Initio

3  In In re Rios, 336 B.R. 177 (Bankr. S.D.N.Y. 2005), the court "struck" the debtor's

4  chapter 7 petition rather than dismissing it due to the debtor's failure to comply with the Credit

5  Counseling Requirements. The court reasoned that if the Credit Counseling Requirements were

6  indeed a prerequisite to eligibility to be a debtor, then failure of the debtor to comply with the

7  Credit Counseling Requirements rendered his case "void ab initio," as if it never had been

8  commenced.[59] The court also reasoned that dismissal of the case would limit the debtor's

9  options and would have led to a result that Congress did not intend under BAPCPA.

### c. Court Which Struck the Petition And Ordered Additional Relief

10

11  In In re Hubbard, 333 B.R. 377 (Bankr. S.D.Tex. 2005), the court analyzed whether or

12  not five sets of individual or co-debtors had met the exigent circumstances test of § 109(h)(3).

13  The court referred to these petitioners as "putative debtors" and found that in four of the five

14  cases, the debtors had properly described exigent circumstances, but that none of the putative

15  debtors had submitted a certification that was satisfactory to the court.[60] Instead of dismissing

16  the five cases, the court concluded that no "case" had been commenced under § 301,[61] and

17

18

19

20

---

[58] See supra FN 5.

21

[59] The court did not explain the consequences of striking a petition, in that the ruling did not discuss whether

22  the filing fee was returned to debtor, if the case docket was erased from the court records, if a trustee received its
statutory fee under § 330(b)(1), etc.

23

[60] After receiving motions from debtors in these five cases, the Court issued an order on November 8, 2005

24  which detailed the requirements for a certification to meet with the Court's satisfaction. The requirements followed
those set forth in § 109(h)(3)(A).

25

[61] § 301 provides:

26

"A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under
such chapter by an entity that may be a debtor under such chapter."

23

therefore there was no "case" to dismiss.[62]  Thus, the court struck the petitions in these five cases.[63]  The court then set an order to show cause under § 329 as to why counsel for these debtors should not pay back to the debtors the funds obtained for advising them and for preparing and filing these petitions, including filing fees.[64]

### d. Courts Which Struck the Petition And Analyzed Automatic Stay

In In re Thompson, 344 B.R. 899 (Bankr. S.D.Ind. 2006), the debtors filed a petition under chapter 13 without complying with the Credit Counseling Requirements.  The court struck the petition, ruling that no case had been commenced.  The UST filed a motion for reconsideration on the grounds that the case should have been dismissed, not the petition struck. The court denied the UST's motion on the grounds that striking a petition is analogous to a court striking a civil complaint under Rule 7003[65] when an attorney is not admitted to practice before the courts of a district.  As the attorney is ineligible to commence a case in that district, no case has been commenced.[66]  The court also analyzed the relationship between the automatic stay and striking a petition, concluding that the automatic stay is  invoked when the petition is

---

[62]  The court did not explain the consequences of rendering a case void ab initio, in that the ruling did not discuss whether the filing fee was returned to debtor, if the case docket was erased from the court records, if a trustee received her statutory fee under § 330(b)(1), etc. For an analysis of possible consequences of striking a petition rather than dismissing a case, including uncertainty for debtor and creditors of the application of the automatic stay, see In re Seaman, 340 B.R. 698, 706 et seq. (Bankr. E.D.N.Y. 2006), In re Tomco, 339 B.R. 145, 159 (Bankr. W.D.Pa. 2006), and In re Ross, 338 B.R. 134, 136 (Bankr. N.D.Ga 2006).

[63]  See also In re Salazar, 339 B.R. 622 (Bankr.S.D.Tex. 2006) in which the Salazar debtors filed a motion to reconsider the ruling to strike their petition rather than dismiss their bankruptcy case, including a request for a determination that the automatic stay had been in place during the period between the filing of their petition and the court's ruling on the motion to extend time. The Court determined that the stay had not been  in effect.

[64]  The court stated: "Pursuant to 11 U.S.C. § 329, the Court may order the return of any funds paid to debtors' counsel. In these cases, it appears that any fees charged by debtor's counsel (including any filing fees that were paid by the putative debtors) exceeded the reasonable value of the services received. Counsel–by failing to comply with the plain working of the statute and this Court's November 8, 2005 order–has failed to cause these individuals to commence cases under the Bankruptcy Code."

[65]  Rule 7003 provides that "Rule 3 F.R.Civ.P. applies in adversary proceedings." F. R. Civ. P. 3 provides:

"COMMENCEMENT OF ACTION.  A civil action is commenced by filing a complaint with the court."

[66]  In re Thompson, 344 B.R. at 905.

1    filed and remains in place until it is either modified or the proceeding is closed.[67] The court

2    concluded that if it had rendered the case "void ab initio," the automatic stay would not have

3    been invoked.

4        In In re Elmendorf, 345 B.R. 486 (Bankr. S.D.N.Y. 2006), the court reached the same

5    conclusion that ineligibility under § 109(h) should result in striking a petition but concluded that

6    in such situations the automatic stay was not invoked.[68] As part of its reasoning, the court

7    concluded that ineligibility of § 109(h) is not curable[69] and that courts have the power under

8    § 105 to strike the petition rather than dismiss the bankruptcy case.[70]

### 5. Case Law on §§ 109(e) and 109(g) and Dismissal

9        Courts in related situations have found that dismissal is not the mandatory remedy for

10   failing to meet a § 109 eligibility requirement. As discussed above, the Ninth Circuit BAP in

11   Wenberg overruled a dismissal order and remanded the case to allow the ineligible debtors to

12   file a motion to convert from a case under chapter 13 to a case under chapter 7.[71] In Rudd, the

13   Eighth Circuit Court of Appeals affirmed an order that had affirmed a conversion order without

14   first dismissing the bankruptcy case.[72]

15

16

17

18   [67] In re Thompson at 906-908. For a partially comparable result, see In re Brown, 342 B.R. 248 (Bankr.D.Md. 2006) in which the court dismissed debtor's case for ineligibility under section 109(h), but also voided a post-petition foreclosure sale as a violation of the automatic stay, holding that the stay was in place despite debtor's ineligibility.

19

20   [68] In re Elmendorf, 345 B.R. at 501, FN 22. The Court distinguished Thompson (supra at FN 67).

21   [69] In re Elmendorf, 345 B.R. at 500-502. The Court discusses the relationship between § 362(b)(21) and curing ineligibilty under § 109(g), and distinguishes it from ineligibility under § 109(h). The Court also distinguished Thompson, supra at FN 67.

22   [70] § 105 provides, in part:

23   "(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

24

25

26   [71] See supra FN 27 .

     [72] See supra FN 36 .

### 6. Consequences of Dismissal

Debtors who file for bankruptcy under BAPCPA without complying with the Credit Counseling Requirements face the harsh consequences visited upon a debtor who must file another bankruptcy case if the prior bankruptcy is dismissed for not strictly adhering to the Credit Counseling Requirements. For a debtor in financial straits, this means the expense of another filing fee ($299.00) and the time, effort, and possible attorneys' fees needed to prepare a new petition and set of case commencement documents. It also means a potential limited availability of the protection of the automatic stay. Under § 362(c)(3), when a debtor files a petition after a petition was pending within the preceding year, the debtor may lose the protection of § 362(a) thirty days after filing the later petition with respect to secured creditors and lessors.[73] A debtor has an opportunity to obtain an order continuing the automatic stay but must promptly file a motion, schedule a hearing,[74] and overcome a presumption that the later case was not filed in good faith.[75] For debtors who had one case dismissed, then a second case dismissed for failure to comply with the Credit Counseling Requirements, they must wait a full year to file another petition if they wish for any protection of the automatic stay.[76]

---

[73] § 362(c)(3) provides:

"If a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)--
    (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case;"

[74] § 362(c)(3)(B) provides:

"on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed."

[75] See § 362(c)(3)(C) for the tests to determine if a case is presumptively not filed in good faith.

[76] § 362(c)(4)(A) provides:

"if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under

Thus, because the consequences of dismissal are so significant, Congress would have mandated dismissal as a remedy for non-compliance with the Credit Counseling Requirements as it did in other situations if it intended dismissal to be the only available remedy.

## C. Test for Cure of § 109(h) Ineligibility

Based upon the foregoing, I conclude that it is appropriate to exercise my discretion in determining whether this bankruptcy case should be dismissed due to ineligibility under § 109(h). The following factors are pertinent:

1. The debtor has a reasonable explanation for not participating in budget and credit counseling within 180 days prior to filing a bankruptcy petition;

2. The debtor participates in budget and credit counseling once the debtor learns that it is necessary; and

3. At the budget and credit counseling session, it is determined that the individual's debts could not have been paid outside of bankruptcy.

## D.  Application of Test to the Instant Case

First, Debtor has a reasonable explanation.  Debtor's Counsel advised him that the Credit Counseling Requirements only applied to debtors with consumer debts, while Debtor's debts were non-consumer in nature, being debts for past taxes and child support payments. Though the advice of Debtor's Counsel was erroneous, nevertheless Debtor is entitled to rely on his attorney's advice.  The changes to the Bankruptcy Code brought on by BAPCPA were numerous and complex, requiring courts and counsel alike much study to sort out the new law and its impact.  It is conceivable that an attorney, within one month after the effective date of BAPCPA, would miss one of the new rules imposed by BAPCPA.  Furthermore, Debtor has proposed a 100% payout to his creditors under a chapter 13 plan.  It would be a harsh result if

section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case;"

27

Debtor suffered a dismissal with all the negative consequences that flow from that because Debtor consistently followed the advice of his counsel.

Secondly, I ordered Debtor to participate in budget and credit counseling and to file the certificate of completion, and Debtor timely complied with both of these orders.

Thirdly, as part of his participation in budget and credit counseling, a budget and repayment plan was not prepared by the approved credit counseling agency. This demonstrates that Debtor did not have a better payment alternative other than through bankruptcy.

### E. Dicta

The purpose for requiring individual debtors to comply with the Credit Counseling Requirements is not specified in § 109(h) or anywhere else in Title 11, and the legislative history is only moderately instructive.[77] To begin with, do the courts and the UST really know what information is being disseminated by credit counseling agencies, and if so, the value of that information?[78] If debtors are receiving information about credit rating and budgeting, it is

---

[77] According to House Report No. 109-31, Pt. 1, 109th Cong., 1st Sess. 18 (2005), "The legislation's credit counseling provisions are intended to give consumers in financial distress an opportunity to learn about the consequences of bankruptcy – such as the potentially devestating effect it can have on their credit rating [FN-75] -- before they decide to file for bankruptcy relief."

[78] It is not certain that debtors are receiving all relevant information and advice when being counseled, or that the information comports with the Congressional intent, whatever that intent may be. See supra FN 13. See also In re Elmendorf, 345 B.R. at 490, FN 3, in which the court noted that in May 2006, the Internal Revenue Service revoked the tax exempt status held by the nation's largest educational credit counseling services, representing 41% of the $1 billion credit counseling industry, after IRS audits revealed that the credit counseling agencies "... exist mainly to prey on debt-ridden customers." (Citing I.R.S. Ends Tax Exempt Status For Some Credit Counselors, N.Y. Times, May 16, 2006 at C6). In the remainder of the footnote, the Court noted "It is into the hands of 'predators' such as these that the consumer debtor has been entrusted before resort to bankruptcy protection may be had. As the filing statistics show bankruptcy is still available— but now the credit counseling agencies are guaranteed a piece of the action. Perhaps Congress should have taken a closer look at this industry *before* placing it between a debtor and the succor of the federal bankruptcy court."

See also http://www.baystatebanner.com/archives/stories/2006/05/051806-06.htm for related information on the same I.R.S. action, which followed a two-year study of 41 tax-exempt credit counseling agencies. It included the intent of the I.R.S. to send compliance inquiries to each of the remaining 740 tax-exempt agencies not currently under audit. See also the I.R.S. website at http://www.irs.gov/pub/irs-tege/cc_report.pdf for the eight page "Credit Counseling Compliance Project" written May 15, 2006.

See also http://www.consumerlaw.org/initiatives/test_and_comm/credit_counseling.shtml for the text of the testimony

possible that receiving this information prior to filing a bankruptcy petition is designed to influence whether or not a debtor files for bankruptcy. However, there is no mention in § 109(h) or its legislative history of using credit counseling to persuade an individual to not file a bankruptcy petition or to file a petition under one chapter rather than another chapter.[79] Nor is there support cited for the proposition that being told about bankruptcy's negative impact on one's credit rating results in either an improvement in debtors' credit ratings or causes one to rethink one's decision to file for bankruptcy. It is hard to imagine that debtors, who have lost their jobs or sustained major medical bills, are more focused on their credit rating than getting out from under the pressure of bills that they cannot pay.[80] It is also possible that having information about the negative consequences on one's credit rating is designed to help a debtor take steps to better understand his credit and to repair his credit after the bankruptcy case is in progress or is completed.

Additionally, it is possible that Congress intended individuals to be spared from having a bankruptcy case on their credit rating, as well as other negative consequences. However, consider the many individuals who truly need the protection of the Bankruptcy Code and, for whatever reason, file for bankruptcy without complying with the Credit Counseling Requirements. If dismissal was intended to be the mandatory remedy, those individuals would then comply with the Credit Counseling Requirements and file a second bankruptcy case to

given before the House Ways and Means Committee Subcommittee on Oversight regarding "Non-Profit Credit Counseling Organizations." The testimony was given on November 20, 2003 by Deanne Loonin, Staff Attorney, on behalf of National Consumer Law Center and Consumer Federation of America.

[79] Interestingly, a substantial portion of the reported cases in which courts have dismissed bankruptcy cases for lack of § 109(h) eligibility involved debtors who filed for relief under chapter 13. See for example In re Henderson, 339 B.R. 34 (Bankr.E.D.N.Y. 2006) (the court dismissed the case of a pro se debtor who cited the lack of an attorney as exigent circumstances).

[80] According to a study reported February 22, 2006 and conducted by the National Association of Consumer Bankruptcy Attorneys (NACBA), 96.7% of 61,335 debtors nationwide who participated in budget and credit counseling since BAPCPA were unable to pay their debts. The reason cited by 79% of the 61,335 debtors is a dire financial situation caused by circumstances beyond their control, including loss of a job, catastrophic medical expense, death of a spouse, divorce or other change in marital status, increased minimum payments on credit cards, predatory lending, etc. This report is posted on the NACBA website at http://nacba.com/news/releases/022206.php

obtain the relief that they need.  It is nonsensical that Congress would prefer that debtors have a bankruptcy case and a dismissal on their credit report without having obtained the relief offered under the Bankruptcy Code.  It is equally nonsensical that Congress would prefer debtors to have a bankruptcy case, a dismissal, and then a second bankruptcy filing on a debtor's credit report.  It makes more sense to minimize the negative consequences on a credit report by allowing debtors who do not obtain credit counseling prior to filing their bankruptcy petition to continue with their bankruptcy case rather than suffer a dismissal.

While I am not here to read the mind of Congress, I recognize that Congress provides for a variety of settings under which it is acceptable for a debtor to first file a bankruptcy petition and then be counseled about credit rating or not be counseled at all.  I conclude that the provisions of BAPCPA leave room for an individual to decide if bankruptcy is the appropriate option without first hearing the magic words that may be dispensed during budget and credit counseling.  Thus, on balance, the positive opportunities provided for debtors under the Bankruptcy Code may equal or outweigh the negative consequences on a debtor's credit rating from filing for bankruptcy.

### F.  Joinder in Conclusions of Law

The following judges of the United States Bankruptcy Court of the Central District of California join in the conclusions of law reached in the above Opinion:

> Honorable Thomas B. Donovan
> Honorable Richard M. Neiter

The following judges of the United States Bankruptcy Court of the Central District of California join in the conclusion of law that § 109(h) eligibility is not jurisdictional:

> Honorable Sheri Bluebond          Honorable Geraldine Mund
> Honorable Samuel L. Bufford       Honorable Kathleen Thompson
> Honorable Victoria S. Kaufman     Honorable Maureen A. Tighe

DATED: 1/25/07

_____
VINCENT P. ZURZOLO
United States Bankruptcy Judge

30

# NOTICE OF ENTRY OF ORDER AND CERTIFICATE OF MAILING

I certify that this order was entered on:  *1-26-07*

I also certify that I mailed a copy of this notice and order to the persons and entities listed below on:  *1-26-07*

Office of the United States Trustee
Dare Law, Trial Attorney
Ernst & Young Plaza
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

**Debtor**
Lope Manalad
1844 West Santa Ynez Street
Los Angeles, CA 90026

**Chapter 13 Trustee**
Nancy K. Curry
606 South Olive Street, Suite 1850
Los Angeles, CA 90014

**Attorneys for Debtor**
Kenneth L. Haddix
Law Offices of Kenneth Lance Haddix
12304 Santa Monica Blvd., Suite 300
Los Angeles, CA 90025

JON D. CERETTO
Clerk of the United States Bankruptcy Court

Dated: *1-26-07*

By:_____
Deputy Clerk